**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| KEITH ALVARADO, ) | CASE NO. 3:15CV102 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE JAMES G. CARR |
| ) | |
| ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security ) | **REPORT & RECOMMENDATION** |
| ) | |
| Defendant. ) | |

Plaintiff Keith Alvarado ("Alvarado") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying Alvarado's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(I), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be AFFIRMED.

### I. Procedural History

On October 31, 2011, Alvarado filed applications for POD, DIB, and SSI alleging a disability onset date of July 15, 2011 and claiming that he was disabled due to lower back injury and spinal defect. (Tr. 180-181, 257-269, 289.) His applications were denied both initially and upon reconsideration. (Tr. 180-219.)

On April 29, 2013, an Administrative Law Judge ("ALJ") held a hearing during which Alvarado, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 123.) On June 18, 2013, a second ALJ found Alvarado was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 123-131.) The ALJ's decision became final when the Appeals Council denied further review. (Tr. 1-7.)

## II.  Evidence

*Personal and Vocational Evidence*

Age forty-two (42) at the time of his administrative hearing, Alvarado is a "younger" person under social security regulations. *See* 20 C.F.R. § 404.1563(C) & 416.963(C). Alvarado has a high school education and past relevant work as newspaper delivery driver, circuit board panel cutter, inspector, delivery truck driver, order picker/warehouse worker, cashier II, and stock clerk. (Tr. 129-130.)

*Relevant Hearing Testimony*

The VE testified that Alvarado had past relevant work as a newspaper delivery driver (DOT medium, semiskilled); circuit board panel cutter (DOT medium, unskilled); inspector (DOT heavy, unskilled), delivery truck driver (DOT medium, semiskilled); order picker/warehouse worker (DOT medium, unskilled); cashier II (DOT light, unskilled); and stock clerk (DOT heavy, semiskilled). (Tr. 170-171.) The ALJ then posed the following series of hypotheticals:

> My first hypo, assuming an individual with [the] age, education, and work experience of the claimant and with the limitations as described by the claimant. Would such an individual be able to perform any of the past work you just described?

(Tr. 172.) The VE responded that the individual could not, due to the ten bad days a month when Alvarado does not leave the house. *Id*. The second hypothetical was "similar to the first one, except the question [was], would there be jobs available in the regional, state, or nation's economy for such an individual?" *Id*. The VE responded that there would be no jobs, for the same reason he articulated in response to the first hypothetical. *Id*.

> The ALJ then posed the third and final hypothetical as follows:
>
> Assume an individual with the age, education, and work experience of the claimant in a sedentary work environment with the capacity [to] sit for up to six hours in an eight hour work day doing repetitive tasks. Would there be jobs for such an individual in the regional, state, or nation's economy?

(Tr. 172-173.) The VE responded affirmatively, identifying the following as representative examples: printed circuit board inspector (sedentary, unskilled), laminator I (sedentary, unskilled), and table worker (sedentary, unskilled). (Tr. 173.) Alvarado's counsel asked the VE to estimate the number of absences that would be tolerated in a calendar year. The VE responded that one absence every six or seven weeks would be acceptable. (Tr. 174.) Counsel also asked whether an individual would be permitted to recline two times a day on an unscheduled basis. (Tr. 174-175.) The VE responded that unscheduled breaks would be an accommodation that would not be permitted by a typical employer. (Tr. 176-178.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

the disability ended.  42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Alvarado was insured on his alleged disability onset date, July 15, 2011 and remained insured through the date of the ALJ's decision, June 18, 2013.  (Tr. 125.)  Therefore, in order to be entitled to POD and DIB, Alvarado must establish a continuous twelve month period of disability commencing between those dates.  Any discontinuity in the twelve month period precludes an entitlement to benefits.  *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

### IV.  Summary of Commissioner's Decision

The ALJ found Alvarado established a medically determinable, severe impairment, due to degenerative disc disease of the lumbar spine; however, his impairment did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 125-127.)  Alvarado was found incapable of performing his past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a full range of repetitive sedentary work. (Tr. 127-129.)  The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Alvarado was not disabled.

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than

a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

Alvarado claims the ALJ erred by: (1) relying on the opinion of Dr. Rajkotwala, as well as failing to accurately incorporate it into the RFC; (2) giving no weight to the opinion of Dr. Renneker; and, (3) not crediting Alvarado's allegations of disabling pain.  As a general matter, the Court notes that Plaintiff's arguments are poorly developed.  In his six pages of argument and analysis, Plaintiff fails to incorporate any law – save for one isolated citation to the Code of Federal Regulations.  (ECF No. 12 at 7-12.)  In the interest of justice, the Court will attempt to address the arguments raised.  Nevertheless, it is not this Court's function to develop an argument on Plaintiff's behalf.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *Meridia Prods. Liab. Litig. v. Abbott Labs.*, No. 04-4175, 2006 U.S. App. LEXIS 11680 (6th Cir. May 11, 2006).

***Opinions of Dr. Rajkotwala and Dr. Renneker***

Neither Dr. Rajkotwala nor Dr. Renneker actually *treated* Alvarado.  Rather, both physicians performed a one-time examination for disability purposes.  (Tr. 367-369, 413-416.)  As such, the ALJ is not required to give good reasons for the weight ascribed to their opinions.

Rather, pursuant to the regulations, "[ALJs] are ***not*** bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists." 20 C.F.R. §§ 416.927(e)(2)(I).  When an ALJ considers the findings from such sources, he or she shall employ the same factors when deciding what weight to ascribe to a treating source (*i.e.* examining or non-examining or the frequency of examination, supportability, consistency, specialization and other factors.  *See* 20 C.F.R. §§ 416.927(e)(2)(ii)).  Nonetheless, unlike treating physicians, the regulations only mandate that an "[ALJ] explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. §§ 404.1527(e)(2)(ii) & 416.927(e)(2)(ii).  In other words, although, "[ALJs] and the Appeals

Council are not bound by findings made by State agency or other program physicians and psychologists, they may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-6p, 1996 SSR LEXIS 3, *5, 1996 WL 374180, *2 (Jul. 2, 1996).

This *explanation* requirement, however, should not be confused with the standard required for the weight ascribed to treating sources. The Sixth Circuit has held that the regulation requiring an ALJ to provide "good reasons" for the weight given a treating physician's opinion does *not* apply to an ALJ's failure to explain his favoring of one non-treating source's opinion over another. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496 (6th Cir. 2006). The "good reasons" rule applies only to treating sources.

With respect to Dr. Rajkotwala, the ALJ expressly stated that he "accepts and adopts the opinion of Dr. Rajkotwala, the consulting physician (Exhibit 4F)." As such, Alvarado cannot reasonably argue that the ALJ ignores or failed to explain the weight ascribed to Dr. Rajkotwala's opinion.[2]

Turning to Dr. Renneker, who also performed a consultative examination, the ALJ found as follows:

> [O]n January 25, 2012, the claimant was seen by Nancy Renneker, M.D., physiatrist [sic], for an independent medical evaluation. On physical examination, the claimant's gait was slow and antalgic. He grabbed onto countertops, examination tops, and backs of chairs to assist with his gait. There was limited range of motion of his lumbar spine with muscle spasm. The left ankle reflex was decreased and the right ankle reflex was absent. There was also sensory loss in the right S1 dermatone (Exhibit 11F).
>
> * * *
>
> Dr. Renneker also offered a functional assessment. She opined that the claimant can walk one city block, sit a total of about two hours, and stand/walk less than two hours in an eight hour workday. He would also need to shift position and take 30 to 45 minute unscheduled breaks. Dr. Renneker additionally stated that the claimant would need a cane and could only occasionally lift 10 pounds. He cannot stoop at all, crouch only 10 percent of the day, and would be absent more

---

[2] The Court will address below Alvarado's argument that the RFC does not accurately incorporate Dr. Rajkotwala's opinion. The Court declines to address Alvarado's perfunctory argument that Dr. Rajkotwala's opinion was too vague to credit, as he cites no authority in support. (ECF No. 12 at 8.)

> than four times a month.  (Exhibit 11F).
>
> I cannot give any weight to Dr. Renneker's opinion.  First, her "objective" findings do not match any of the other examinations in the record, including that of the neurologist at Ohio State.  Second, it appears to be based in large part on the claimant's allegations.  However, as described in more detail below, the claimant's allegations are not credible.

( Tr. 126-127.)

The Court finds nothing deficient about the ALJ's explanation of the weight accorded to Dr. Renneker.  Alvarado takes issue with the ALJ's assertion that Dr. Renneker's findings are inconsistent with other examinations in the record.  (ECF No. 12 at 9.)  Alvarado proceeds to cite evidence that he believes supports Dr. Renneker's findings and concludes the ALJ's explanation is not supported by substantial evidence.  (ECF No. 9-10.)  To the extent Alvarado is simply arguing that substantial evidence of record could have supported the inclusion of some additional limitations based on Dr. Renneker's opinion, such an argument is immaterial and misconstrues the substantial evidence standard, which "presupposes that there is a zone of choice within which the [ALJ] can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Williamson v. Apfel*, 1998 U.S. App. LEXIS 30010 at *13 (6th Cir. 1998)(*quoting Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). As such, even if the evidence of record could have justified the inclusion of Dr. Renneker's more restrictive limitations, that alone does not demonstrate that the RFC or the decision to accord little weight to Dr. Renneker was not supported by substantial evidence.

There is sufficient evidence to support the ALJ's treatment of Dr. Renneker's opinion. By way of example, the ALJ cited the opinion of Albert Timperman, M.D., a neurologist who, like Dr. Renneker, also performed a one-time examination of Alvarado on April 4, 2013.  (Tr. 127, 436-440.)  He opined that Alvarado's pain was "way out of proportion to his spinal condition and I believe his clinical presentation is an attempt to either consciously or subconsciously to convince us to give him more pain medication or to consider disability or both." (Tr. 440.)  Unlike Dr. Renneker, Dr. Timperman found normal gait, but indicated it was difficult to assess other aspects of his abilities in the lower extremities due to lack of effort.  (Tr.

439.)

In addition, the opinions of State Agency physicians John Mormol, M.D., and Teresita Cruz, M.D., also support the RFC finding while contradicting Dr. Renneker's assessment.[3] On December 9, 2011, Dr. Mormol reviewed Alvarado's medical records and found Alvarado could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; sit, stand and/or walk for a total of six hours in an eight-hour workday; climb ramps or stairs and balance without limitation; frequently kneel, stoop or crouch; but only occasionally climb ladders, ropes, scaffolds, or crawl.  (Tr. 185-187.)  On April 16, 2012, Dr. Cruz reviewed Alvarado's medical records and gave great weight to Dr. Rajkotwala's opinion, because it was consistent with the medical record and Alvarado's activities of daily living.  (Tr. 205.)  She found that Alvarado could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; sit, stand and/or walk for a total of six hours in an eight-hour workday; climb ramps or stairs, balance and kneel without limitation; frequently crawl; but only occasionally climb ladders, ropes, scaffolds, stoop or crouch.  (Tr. 205-207.)

Alvarado also takes issue with the ALJ's statement that Dr. Renneker's opinion was, in large part, based on the claimant's allegations, which were not credible.  (Tr. 127.)  Again, Alvarado cites no law indicating that such a finding is inappropriate or cause for remand.  (ECF No. 12 at 10-11.)  Some courts have found that a physician's opinion, "premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations may be disregarded where those complaints have been properly discounted." *Reinertson v. Barnhart*, 127 Fed. Appx. 285, 290 (9th Cir. 2005) (internal quotation marks omitted) (*citing Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 602 (9th Cir. 1999)); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004) (finding that ALJ did not err by disregarding the opinion of a treating physician where the limitation in question appeared to be based not upon his own medical conclusion, but upon the conclusion of a different doctor and the claimant's self assessment); *Tate v. Comm'r of*

---

[3] These opinions actually assess a greater functional range than found by the ALJ and are consistent with the ability to perform light work.

9

*Soc. Sec.*, 467 Fed. App'x 431, 433 (6th Cir. 2012) (finding no error where the ALJ discounted a treating doctor's opinion because there were substantial gaps in treatment and where the doctor's assessment appeared to be based on claimant's subjective complaints without sufficient support from objective clinical or neurological findings); *see also Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx.149, 156 (6th Cir. 2009) (finding treating physician was not entitled to deference where it was based on claimant's subjective complaints); *accord Rogers v. Astrue*, 2012 U.S. Dist. LEXIS 24712, 2012 WL 639473 at *4 ("Simply recording Plaintiff's subjective complaints is not objective medical data....") As the ALJ found Alvarado was not credible, a determination that, as discussed below is entitled to considerable deference, it was not unreasonable to discount those opinions that were based heavily on his subjective self-reporting or his questionable effort during testing.

Finally, the Court returns to Alvarado's argument that the RFC determination was inaccurate because it did not properly incorporate Dr. Rajkotwala's opinion to which the ALJ ostensibly accorded great weight. RFC is an indication of an individual's work-related abilities despite their limitations. *See* 20 C.F.R. § 416.945(a). A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner. *See* 20 C.F.R. § 416.945(e). As such, the ALJ bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 416.945(a) (emphasis added). "Judicial review of the Commissioner's final administrative decision does not encompass re-weighing the evidence." *Carter v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 40828 at **21-22 (W.D. Mich. Mar. 26, 2012) (*citing Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472 (6th Cir. 1982); *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 414 (6th Cir. 2011); *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 807 (6th Cir. 2008)). Moreover, a plaintiff's mere disagreement with the weight an ALJ ascribes to certain opinions does not provide basis for overturning the RFC determination. *Carter*, 2012 U.S. Dist. LEXIS 40828 at **21-22.

The RFC determination sets out an individual's work-related abilities despite their limitations. *See* 20 C.F.R. § 416.945(a). A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner. *See* 20 C.F.R.§ 416.927(d)(2). An

10

ALJ "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." *See* 20 C.F.R.§ 416.927(d)(3).  As such, the ALJ bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence.  *See* 20 C.F.R. § 416.946(C).  "Judicial review of the Commissioner's final administrative decision does not encompass re-weighing the evidence."  *Carter v. Comm'r of Soc. Sec.*, 2012 WL 1028105 at * 7 (W.D. Mich. Mar. 26, 2012) (citing *Mullins v. Sec'y of Health & Human Servs*., 680 F.2d 472 (6th Cir. 1982); *Reynolds v. Comm'r of Soc. Sec*., 424 Fed. Appx. 411, 414 (6th Cir. 2011); *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 807 (6th Cir. 2008)).

Dr. Rajkotwala assessed Alvarado as having the following functional capacity: "The patient can **sit, stand, and walk *with* some difficulty**.  Lift and carry 0-5 lbs. frequently and 5-10 lbs. occasionally."  (Tr. 369) (emphasis added).  Alvarado reasons that the ALJ, while limiting him to sedentary work, fails to include any sitting limitations.  (ECF No. 12 at 7.)  Essentially, Alvarado asserts that the phrase "with some difficulty" modifies sitting, standing, *and* walking.  Admittedly, Dr. Rajkotwala's opinion is ambiguous.  Alvarado's reading that the modifier "with some difficulty" applies to sitting is not an unreasonable interpretation.  However, the Court cannot conclude that it is the *only* reasonable interpretation, as one can just as easily construe the modifier as applying solely to walking.  The Court finds nothing unreasonable or erroneous with the ALJ's interpretation.

Furthermore, assuming Dr. Dr. Rajkotwala's opinion does support a finding that Alvarado had some difficulty sitting, it does not follow that the ALJ's explanation of the weight he ascribed to the opinion was procedurally inadequate or that the RFC was not supported by substantial evidence.  A similar argument was addressed and rejected in *Lambert-Newsome v. Astrue*, 2012 U.S. Dist. LEXIS 98649, 2012 WL 2922717 at * 6 (S.D. Ill. July 17, 2012).  Therein, a plaintiff argued that an ALJ's decision was "patently inconsistent" because it gave a consultative examiner's opinion great weight, but the RFC assessment did not mirror the consultative examiner's assessment.  *Id*.  The *Lambert-Newsome* court explained that "the fact that [the ALJ] gave 'great weight' to Dr. Naseer's opinion does not mean that he was required to adopt it wholesale [as] [t]he issue of RFC is reserved to the Commissioner..." *Id*.; *see also*

11

*Straley v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 187329 (N.D. Ohio Dec. 27, 2012) (rejecting argument that because the ALJ ascribed "great weight" to a state agency physician's opinion, she was required to adopt the doctor's opinion verbatim in its entirety), *rev'd on other grounds by*, 2013 U.S. Dist. LEXIS 43424 (N.D. Ohio Mar. 27, 2013); *cf. Smith v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 40277, 2013 WL 1150133 at * 11 (N.D. Ohio March 19, 2013) ("Simply put, there is no legal requirement for an ALJ to explain each limitation or restriction he adopts or, conversely, does not adopt from a non-examining physician's opinion, even when it is given great weight"); *Irvin v. Astrue*, 2012 U.S. Dist. LEXIS 34448, 2012 WL 870845 at * 2-3 (C.D. Cal. March 14, 2012) (finding that although the ALJ gave great weight to a consultative examiner's opinion, he did not err in implicitly rejecting one limitation from that opinion).  The ALJ giving "great weight" to Dr. Rajkotwala's opinion did not require him to adopt the alleged difficulty sitting.  Furthermore, the omission of such a limitation from the RFC is supported by substantial evidence as there is no other evidence, save for Dr. Renneker's rejected opinion, establishing Alvarado cannot sit for six-hours in an eight-hour workday.

In summary, the ALJ did not err in giving great weight to the opinion of Dr. Rajkotwala, which was supported by other medical opinions and objective medical evidence in the record. Moreover, the ALJ did not err in giving no weight to the opinion of Dr. Renneker, which found little support in the record and appeared to be predicated upon Alvarado's self-professed limitations.  Accordingly, the Court finds that the RFC is supported by substantial evidence.

*Credibility*

Alvarado also asserts that the ALJ failed to conduct a proper credibility analysis.  (ECF No. 12 at 11-12.)  It is well settled that pain alone, if caused by a medical impairment, may be severe enough to constitute a disability.  *See Kirk v. Sec' of Health and Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  When a claimant alleges symptoms of disabling severity, the ALJ must follow a two-step analysis.  First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment.  Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the symptoms."  SSR 96-7p. Essentially, the same test applies where the alleged symptom is pain, as the Commissioner must

12

(1) examine whether there is objective medical evidence of an underlying medical condition. If there is, then the Commissioner must examine whether (2)(a) the objective medical evidence confirms the alleged severity of pain, *or* (2)(b) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. *See Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

The ALJ found that Alvarado suffered from medically determinable impairments that "could reasonably be expected to produce the claimant's pain or other symptoms." (Tr. 128.) However, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. 128.)

Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Nonetheless, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for the weight." SSR 96-7p; *see also Felisky,* 35 F.2d at 1036 ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so"); *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005) (stating that an ALJ, in a unified statement, should explain his or her credibility findings in terms of the factors set forth in the regulations, thereby permitting the court to "trace the path of the ALJ's reasoning.")

To determine credibility, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence in the record. *See* SSR 96-7p. Beyond medical evidence, there are seven factors that the ALJ should consider. The seven factors are: (1) the individual's daily activities; (2) the location, duration,

frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, Introduction; *see also Cross*, 373 F. Supp. 2d at 732.

The ALJ's decision contains a lengthy explanation containing the reasons for finding Alvarado not fully credible:

> The record as a whole does not substantiate the claimant's allegation of a disabling impairment or combination of impairments. As previously discussed, the objective medical evidence does not indicate the presence of an impairment or combination of impairments capable of producing severe, intractable levels of pain, fatigue, or other symptoms that would preclude all work activity. As summarized above, MRI findings show only mild degenerative changes, no weakness in his legs to warrant the need for a cane, no atrophy, and no gait abnormality except the one examination for his disability claim.
>
> Additionally, although the claimant stated that Dr. Evers suggested the use of a cane, Dr. Evers' progress notes make no mention of this suggestion. Furthermore, there are several references to the claimant not cooperating fully with the examinations and the claimant's complaints of pain not being consistent with the objective evidence. For instance, Dr. Timperman, the Ohio State neurologist, wrote that the claimant's pain "is way out of proportion to his spinal condition and I believe his clinical presentation is an attempt either consciously or subconsciously to convince us to give him more pain medication or to consider disability or both. Quite frankly he needs to get back to work and I made this very clear to him" (Exhibit 13F, p. 5). And at the September 15, 2012, visit to Dr. Evers, it was stated that "there is evidence of distractibility with this exam and lack of cooperation" (Exhibit 9F, p. 5).
>
> There are other inconsistencies in the record. For instance:
>
> - In August 2011 the claimant rated his pain as 10 out of 10. Yet he was noted to be in no acute distress which one would not expect from 10/10 pain (Exhibit 2F).
>
> - There is no evidence of the "electrical signal from his brain to his leg" not registering and no significant complaints of falling down.
>
> - Although the claimant stated that he has difficulty walking around the grocery store [sic] and uses the cart. Otherwise, while outside he uses the cane. However, in October 2012 the claimant had walked to the Center Street Community Health Center "without problems Today whole way from his home" (Exhibit l0F, p. 2).

14

- The claimant has also been inconsistent regarding his ability to stand, sit, and walk despite no change in the objective evidence. In April 2012 he stated he could stand/walk, sit 5 to 10 minutes, and lift 5 to 10 pounds (Exhibit 4F). Yet in October 2012 he could only stand/walk and sit 8 to 10 seconds and lift 1 pound (Exhibit 9E).

- The claimant also has a very poor work history with sporadic earnings with many years of very low wages, i.e. in 2010 he earned $1.10; in 2009 $2882.70; in 2003 $222.00; etc. (Exhibit 3D). This work history is more indicative of someone with a very poor work ethic or someone with reasons other than his impairments for not working.

These inconsistencies and exaggerations within the documentary record and the claimant's testimony diminish his credibility and do not support a further reduction of the established residual functional capacity. Therefore the claimant retains the residual functional capacity as previously established.

(Tr. 128-129.)

The ALJ's credibility determination, which is entitled to considerable deference, comported with the requirements of SSR 96-7p. Among the seven factors listed, the ALJ specifically discussed some of Alvarado's daily activities, the alleged intensity of his pain, some of the treatment used by Alvarado (*i.e.* his unprescribed use of assistive devices) other than medication. The ALJ also cited other factors such as the suggestion by medical sources that Alvarado was uncooperative or engaging in drug-seeking behavior. An ALJ need not analyze all seven factors, but should show that he considered the relevant evidence. *See Cross*, 373 F. Supp. 2d at 733; *Masch v. Barnhart*, 406 F. Supp.2d 1038, 1046 (E.D. Wis. 2005); *Allen v. Astrue*, 2012 U.S. Dist. LEXIS 47590 (N.D. Ohio Apr. 4, 2012). Alvarado's brief merely points to evidence which he believes tends to support a finding that he is credible. (ECF No. 12 at 11-12.) It is not this Court's function to conduct a *de novo* credibility determination, but rather to ensure that the ALJ actually performed a procedurally proper analysis. The Court finds no deficiency in the ALJ's determination, and Alvarado's final assignment of error is without merit.

## VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision should be AFFIRMED.

s/ Greg White
United States Magistrate Judge

Date: January 5, 2016

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**