IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Keith Alvarado,                          Case No. 3:15cv102

           Plaintiff,

    v.                                       **ORDER**

Carolyn W. Colvin
    Acting Commissioner of Social Security

          Defendant.

This is a Social Security case in which plaintiff Keith Alvarado appeals from the Commissioner's decision denying his continuing disability and applications for Period of Disability (POD), Disability Insurance benefits (DIB), and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, 1381 *et seq*.

Alvarado objects to the Magistrate Judge's Report and Recommendation (R&R) (Doc. 14) and asks I overrule the R&R and reverse the Commissioner's decision. (Doc. 15).

I have jurisdiction under 42 U.S.C. § 405(g).

For the following reasons, I adopt in full the R&R, and I affirm the decision of the administrative law judge (ALJ).

**Background**

In August 2011, Alvarado saw osteopath Hafusat Oni, D.O., complaining of back pain. (Tr. 350).[1] Alvarado reported that his pain was 10/10, but denied any limitation in motion. (*Id.*). Upon

---

[1] Citations to "Tr." refer to the Transcript of Proceeding before the Social Security Administration, Docket # 11.

examination, Alvarado had normal strength, did not appear to be in any acute distress, but exhibited some decreased range of motion in his lumbosacral spine and had a positive bilateral straight leg test (*Id.*).

That same day, imaging of Alvarado's lumbar spine revealed "chronic bilateral pars defect at L5 with trace subluxation," but did not show acute bony abnormalities. (Tr. 349).

A September 2011 MRI of Alvarado's lumbar spine was mostly normal and revealed "[n]o areas of spinal stenosis or appreciable nerve compression[,]" although it did show some "L5 pars defects" and "mild disc degenerative changes at the L5-S1 level." (Tr. 354).

In October 2011, Alvarado went to the emergency department complaining of abdominal pain. (Tr. 358). Alvarado exhibited a full range of motion in his lumbar spine, normal strength, a normal gait and had no neurological deficits. (Tr. 359-60).

In December 2011, state agency reviewer John Mormol, M.D., evaluated Alvarado's medical records and assessed Alvarado's residual functional capacity (RFC). (Tr. 185-87). Dr. Mormol diagnosed Alvarado with discogenic and degenerative disorders of the back and found that Alvarado: could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; sit, stand and/or walk for a total of six hours in an eight-hour workday; climb ramps or stairs and balance without limitation; frequently kneel, crawl or crouch; but only occasionally climb ladders, ropes, scaffolds, or crawl; but had to avoid even moderate exposure to hazards (Id.).

The state agency sent Alvarado to physician Khozema Rajkotwala, M.D., for a consultative examination in April 2012 (Tr. 367-73). Alvarado complained of back pain and "difficulty standing, sitting, and walking for more than 5-10 min. and lifting more than 5-10 lbs." (Tr. 367). Upon

2

physical examination, Dr. Rajkotwala found no inflammation of the joints, that Alvarado's sensory system and gait were intact, and rated Alvarado's strength as 5/5 in his arms and legs. (Tr. 368-69).

Alvarado also had "no muscle spasm, spasticity or clonus," but Dr. Rajkotwala observed that Alvarado had a limited range of motion in his dorsolumbar spine. (*Id.*). Dr. Rajkotwala noted that Alvarado "can sit, stand and walk with some difficulty," but opined that Alvarado can "[l]ift and carry 0-5 lbs. frequently and 5-10 lbs. occasionally" (Tr. 369).

Days later, state agency reviewer Teresita Cruz, M.D., evaluated Alvarado's medical records and assessed his RFC and, in doing so, gave great weight to Dr. Rajkotwala's opinion as consistent with the medical record and Alvarado's activities of daily living. (Tr. 204, 205-07). Dr. Cruz diagnosed Alvarado with discogenic and degenerative disorders of the back and found that Alvarado: could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; sit, stand and/or walk for a total of six hours in an eight-hour workday; climb ramps or stairs, balance and kneel without limitation; frequently crawl; but only occasionally climb ladders, ropes, scaffolds, stoop or crouch; and had to avoid even moderate exposure to hazards. (Tr. 205).

The next month, physician Fatima Tsalikova, M.D., saw Alvarado for his lower back pain. (Tr. 375). A physical examination revealed that Alvarado had a normal range of motion in the lumbar spine, no motor weakness and no joint instability. (Tr. 375-76).

In early-September 2012 , Alvarado saw osteopath Michael Evers, D.O., for his lower back pain. (Tr. 399). Alvarado described "his pain as being dull ache in the low back and sharp pain in the lower extremities." (*Id.*). Dr. Evers noted Alvarado had "no physical therapy, no injections, no back surgery." (Tr. 400). On physical examination, Alvarado was "able to perform a deep squat and stand erect," had a negative straight leg raising test in the seated and supine position," and exhibited

3

normal motor strength, but was limited in flexion at the waist. (Tr. 399-400). Dr. Evers also noted that "[t]here is evidence of distractibility with this exam and lack of cooperation" (*Id.*).

That next day, Alvarado had a MRI of his lumbar spine, which revealed normal curvature, no significant disc protrusion, but also showed some minor hypertrophy and disc degeneration. (Tr. 397-98). "[T]he main findings centered [on] L5-S1 where there is some disc degeneration small disc protrusion [and] [b]ilateral pars interarticularis defects without subluxation."(*Id.*).

In mid-September 2012, Alvarado visited the emergency department complaining of anxiety. (Tr. 393). Doctors noted Alvarado's history of back pain, but on physical examination Alvarado had a full, normal range of motion in his spine, a normal gait and normal strength in his arms and legs. (Tr. 394).

Alvarado attended physical therapy for about a month from October 2012 through November 2012. (Tr. 382-91). Upon discharge, Alvarado made some progress, but was unable to perform thrity minutes of aquatic therapy, and Alvarado reported that he rarely lifts over ten pounds out of fear of exacerbating his lower back pain. (Tr. 382).

Alvarado saw Dr. Tsalikova again a few more times in October 2012 for his back pain. (Tr. 404, 408). At one of his visits, Alvarado walked to the health center "without problems [t]oday whole way from his home." (Tr. 404). Alvarado's physical examinations were normal except for some tenderness and decreased range of motion in his lumbar spine. (Tr. 405, 409).

In January 2013, Alvarado saw physician Nancy Renneker, M.D., for an independent medical evaluation. (Tr. 413). During the examination, Alvarado exhibited an antalgic, slow gait; he "grab[bed] onto countertops, exam tabletops, and backs of chairs to assist with gait," and had limited motion in his lumbar spine with muscle spasms. (Tr. 415). Alvarado's left ankle reflex was

decreased, his right ankle reflex was absent, and he had decreased sensation on the bottom of his right foot (*Id.*). Dr. Renneker opined that Alvarado had the following job restrictions:

> (1) no floor to waist bending, no squatting, kneeling, crawling, climbing of ladders or stairs (2) unable to repetitively use right ankle and foot to operate foot controls (3) able to sit in a chair with a back support for a maximum interval of 30 minutes, able to stand for a maximum interval of 20 minutes, able to walk on a level surface for a maximum interval of 10 minutes and (4) able to occasionally lift from knee height to shoulder height in both hands an object weighing up to 7 lbs. and . . . is able to carry this 7 lb. object a distance of no more than 10 to 20 yards on a level surface and on an occasional basis only. Of note, [Alvarado] is unable to operate motorized equipment in the work place due to his narcotic use. [Alvarado] is unable to work/lift at a sedentary level.

(*Id.*).

Dr. Renneker also opined that Alvarado would need to take unscheduled breaks that could last between thirty and forty-five minutes; would need a cane; could only occasionally lift ten pounds; could only crouch ten percent of the day; could not stoop; and would be absent more than four times a month. (Tr. 418-420). Dr. Renneker summarized that Alvarado "is permanently and totally disabled from performing sustained remunerative employment due to residuals related to his diagnosis of L5-S1 disc protrusion, L5-S1 degenerative disc disease, bilateral L5 pars interarticularis defects, and bilateral right greater than left lower extremity neuralgia." (*Id.*).

A few months later, neurologist Albert Timperman, M.D., saw Alvarado for a neurosurgical consultation and evaluation. (Tr. 436). Alvarado denied having pain in his legs, paresthesia and weakness, and rated his pain as 4/10. (*Id.*). Alvarado exhibited a normal gait, although "[h]eel toe walking was performed poorly; in fact, he made no specific effort to carry out these activities stating simply that he couldn't do so." (Tr. 439).

5

Alvarado also put forth "tremendous[ly] limited effort" in performing a knee squat and during motor testing of the foot. (*Id.*). Dr. Timperman observed that Alvarado had "no muscle atrophy, hypertrophy, fasciculation or tonus changes" in his legs and feet, but that Alvarado did have some "give way weakness" and decreased sensation in his feet. (*Id.*). At this visit, Dr. Timperman also observed an MRI of Alvarado's lumbar spine, which was "without contrast enhancement" compared to a September 2011 MRI, and diagnosed low back and bilateral hip pain. (Tr. 439-40).

Dr. Timperman concluded that Alvarado's "pain at present is way out of proportion to his spinal condition and I believe his clinical presentation is an attempt either consciously or subconsciously to convince us to give him more pain medication or to consider disability or both. Quite frankly he needs to get back to work and I made this very clear to him." (Tr. 440).

On October 31, 2011, Alvarado filed applications for POD, DIB, and SSI alleging a disability onset date of July 15, 2011 and claiming that he was disabled due to lower back injury and spinal defect. (Tr. 180-181, 257-269, 289.). The Commissioner denied his applications both initially and upon reconsideration. (Tr. 180-219.)

On April 29, 2013, an Administrative Law Judge ("ALJ") held a hearing during which Alvarado was represented by counsel. (Tr. 123). An impartial vocational expert testified. (*Id.*) On June 18, 2013, a different ALJ found Alvarado was able to perform a significant number of jobs in the national economy and was, therefore, not disabled. (Tr. 123-131). The ALJ's decision became final when the Appeals Council denied further review. (Tr. 1-7).

On January 16, 2015, Alvarado filed his complaint to challenge the Commissioner's final decision. (Doc. 1). I referred the case to the Magistrate Judge, and the parties completed briefing. On

6

January 5, 2016, the Magistrate Judge recommended in his R&R that I affirm the Commissioner's final decision. (Doc. 14).

## Standard of Review

When reviewing a Magistrate Judge's R&R, I make a de novo determination regarding the portions to which plaintiff objects. *See* 28 U.S.C. § 636(b)(1).

In reviewing the Commissioner's decision, I must determine whether substantial evidence supports the ALJ's findings, and whether the ALJ applied the proper legal standards. See 42 U.S.C. § 405(g); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

I may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If substantial evidence supports it, I must affirm the ALJ's decision, even if I would have decided the matter differently. *See* 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brainard*, 889 F.2d at 681 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether substantial evidence supports the ALJ's findings, I view the record as a whole, *see Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980), and consider anything in the record suggesting otherwise. *See Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978).

**Discussion**

Alvarado raises just two objections to the R&R. He argues the Magistrate Judge erred in finding: 1) "that Dr. Rajkotwala's assessed limitations are ambiguous" as to whether he opined that Alvarado had difficulty sitting and standing; and 2) that "even if Dr. Rajkotwala's opinion is read to include difficulty with sitting, the ALJ's failure to incorporate any sitting limitation is of no consequence. (Doc. 15 at 2). I address each argument in turn.

As to Alvarado's first objection, the Magistrate Judge noted that "Dr. Rajkotwala assessed Alvarado as having the following functional capacity: "The patient can **sit, stand, and walk *with some difficulty.*** Lift and carry 0-5 lbs. frequently and 5-10 lbs. occasionally.'" (R&R at 11) (citing Tr. 369) (emphasis in original). The Magistrate Judge concluded that:

> Alvarado's reading that the modifier 'with some difficulty' applies to sitting is not an unreasonable interpretation. However, the Court cannot conclude that it is the only reasonable interpretation, as one can just as easily construe the modifier as applying solely to walking. The Court finds nothing unreasonable or erroneous with the ALJ's interpretation.

(Doc. 14) (emphasis in original).

Alvarado contends the Magistrate Judge erroneously inferred that the ALJ interpreted Dr. Rajkotwala's opinion as solely applying the modifier "some difficulty" to Alvarado's walking ability, arguing the ALJ "never explicitly states that he has interpreted Dr. Rajkotwala's opinion as [such]" (Doc. 15 at 4). Alvarado's contention is misguided because it ignores the fact that the ALJ's decision must be read as a whole. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997) ("[W]e . . . review briefly the record as a whole to determine whether there is substantial

evidence to support the ALJ's finding that [plaintiff] was not disabled within the meaning of the Act.").

Viewed through that lens, the ALJ's decision shows that he found that all but one of Alvarado's "examinations reveal[ed] normal gait, normal neurological evaluation, no weakness, and no atrophy." (Tr. 126-27).The ALJ plainly discounted Dr. Renneker's opinion that, among other things, limited Alvarado to only sitting a total of about two hours in an eight hour workday (Tr. 127). Further, another doctor (Dr. Cruz) actually gave Dr. Rajkotwala's opinion great weight while opining that Alvarado did not have significant sitting limitations. (Tr. 205-07). Thus, reviewing the record evidence as a whole, the ALJ credited the interpretation of Dr. Rajkotwala's opinion as excluding sitting limitations. Alvarado has not demonstrated how that analysis is legally deficient.

Alvarado bases his second objection on his first objection – that the Magistrate Judge's view of the ALJ's interpretation of Dr. Rajkotwala's opinion was incorrect. As noted above, that objection is meritless. Even if it were not, however, Alvarado's second objection still fails because not all of Dr. Rajkotwala's findings constituted part of his opinion.

Alvarado concedes that case law supports the proposition that the ALJ does not need to adopt opinions on a claimant's limitations verbatim. Alvarado suggests, however, that the ALJ must do so when he/she purports to adopt an opinion. (Doc. 15 at 5-8). To the contrary, "the fact that [the ALJ] gave 'great weight' to [the examiner's] opinion does not mean that he was required to adopt it wholesale [as] [t]he issue of RFC is reserved to the Commissioner." *Lambert-Newsome v. Astrue*, 2012 WL 2922717 at *6 (S.D. Ill.).[2] Thus, Alvarado's ALJ giving "great weight" to Dr. Rajkotwala's

---

[2] *See Straley v. Comm'r of Soc. Sec.*, 2012 WL 7809072, *11 (N.D. Ohio) (rejecting argument that because the ALJ ascribed "great weight" to a state agency physician's opinion, she was required to adopt the doctor's opinion verbatim in its entirety), *rev'd on other grounds*, 2013 WL 1284151 (N.D.

opinion did not require him to adopt Avarado's alleged difficulty sitting.

To be sure, substantial evidence supports the omission of such a limitation from the RFC . There is no other evidence, save for Dr. Renneker's rejected opinion and Alvarado own statements, establishing Alvarado cannot sit for six hours in an eight-hour workday. Indeed, ample evidence suggests otherwise. Accordingly, Alvarado's second objection also fails.

## Conclusion

In sum, I find substantial evidence supports the ALJ's findings of fact, and the ALJ applied the law correctly to those facts. *Brainard* 889 F.2d at 681. I therefore must affirm. 42 U.S.C. § 405(g); *Kinsella*, 708 F.2d at 1059; see also Mullen v. Bowen, 800 F.2d at 545.

It is therefore:

ORDERED THAT

1. Alvarado's objection to the Magistrate Judge's Report and Recommendation (Doc. 15) be, and the same hereby is, overruled; and

2. The Report and Recommendation (Doc. 14) be, and the same hereby is, adopted as the order of this court.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge

---

Ohio); *see also Smith v. Comm'r of Soc. Sec.*, 2013 WL 1150133, *11 (N.D. Ohio) ("Simply put, there is no legal requirement for an ALJ to explain each limitation or restriction he adopts or, conversely, does not adopt from a non-examining physician's opinion, even when it is given great weight."); *Irvin v. Astrue,*, 2012 WL 870845, * 2-3 (C.D. Cal.) (finding that although the ALJ gave great weight to a consultative examiner's opinion, he did not err in implicitly rejecting one limitation from that opinion).